**NASHVILLE, C. & ST. L. RY. CO. v. UNITED STATES.***

(Circuit Court of Appeals, Sixth Circuit. December 7, 1920.)

No. 3426.

**Internal revenue ⊸9—Allowance from gross income for "depreciation" of property held proper.**

    On an issue as to the amount a railroad company was entitled to deduct from gross income for depreciation of property, under Corporation Tax Act Aug. 5, 1909, § 38, subd. 2, the court *held* to have correctly instructed that the measure of depreciation was the difference in the intrinsic value of the property as a whole at the beginning and end of the year, and that enhanced value of parts through repairs and replacements should be set off against depreciation of other parts not repaired or replaced.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depreciate.]

In Error to the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Action by the United States against the Nashville, Chattanooga and St. Louis Railway Company. Judgment for the United States, and defendant brings error. Affirmed.

See, also, 249 Fed. 678, 161 C. C. A. 588.

Fitzgerald Hall, of Nashville, Tenn. (Frank Slemons, of Nashville, Tenn., on the brief), for plaintiff in error.

Lee Douglas, U. S. Atty., and Wm. H. Ewing, Asst. U. S. Atty., both of Nashville, Tenn., for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This case is before this court a second time. In substance it is this: In June, 1916, the United States, under the direction of its Commissioner of Internal Revenue, brought suit to recover from defendant an excise tax of 1 per cent. claimed to be due from it for each of the years 1909 and 1910, under section 38 of the Revenue Act of August 5, 1909 (36 Stat. 11, 112, c. 6), which makes every corporation to which it applies "subject to pay annually" a special excise tax of 1 per cent. on its net income, to be determined by deducting from gross income, among other things, operating expenses, losses sustained, "including a reasonable allowance for de-

preciation of property," interest on indebtedness, and taxes. The declaration alleged the filing by defendant with the Commissioner of Internal Revenue, on February 25, 1910, and February 21, 1911, respectively, of returns of its net income for the respective years 1909 and 1910; that both returns were incorrect as to the amount of defendant's income—that for 1909, in that it included, as an item of deduction from gross income, an alleged charge of $26,000 to expenses, which was not a necessary expense actually paid out of income in the maintenance and operation of its business and properties; those for both years, in that they included charges to depreciation of roadway, amounting to $249,024.54 for the year 1909 and $239,229.70 for the year 1910, which were not charged against the capital valuation of the roadway on its books, and were not reasonable allowances for depreciation of roadway within the meaning of the act; that the three items named were disallowed by the Commissioner of Internal Revenue and held by him to be incorrectly charged, and that they were in fact not correct and proper deductions from gross income, and that the total amounts so deducted, which should have been included as net income in said returns, were for the year 1909 $275,024.54, and for 1910 $239,-229.70; that the defendant was thus indebted to the United States and subject to pay an income tax of 1 per cent. upon the amounts stated; that it had failed and refused to make payment; and that the alleged taxes were thus due from defendant and payable by it to the United States.

The railway company demurred to the declaration upon grounds, so far as now important: (a) That the government could not recover an excise tax in advance of an assessment by the Commissioner of Internal Revenue; and (b) that the railway company, having made its returns and paid the assessments made by the Commissioner, could be made subject to no further obligation unless the Commissioner should discover some item to be false within three years from March 1st of the year succeeding the calendar year for which the return is made. The trial court sustained the demurrer. This court reversed that action, and remanded the case for further proceedings and trial. 249 Fed. 678, 161 C. C. A. 588. The railway company then pleaded nil debet to each of the two counts of the declaration, together with special pleas to each count, raising the identical questions which had before been presented by its demurrer to the government's declaration. The government's demurrers to these special pleas were sustained by the District Court, on the authority of this court's decision. Upon trial by jury there were verdict and judgment against the railway company for $5,142.50, being 1 per cent upon the amount of the three items in question. This writ is to review that judgment.

1. Upon the present hearing counsel for the railway company, in support of its special pleas overruled below, has again argued at great length the questions presented to and considered by this court under defendant's demurrer to the government's declaration. All of these questions, which relate equally to the special pleas, were, upon careful consideration, decided by this court against defendant's contention. It is unnecessary here to repeat the grounds of that decision, which

sufficiently appear from our published opinion. 249 Fed. 678, 161 C. C. A. 588. The argument now advanced sheds no additional light upon the subject. We content ourselves with saying that we find no reason to depart from our former conclusions. The assignments of errors numbered 1 to 5, inclusive, are accordingly overruled.

2. The remaining assignments relate to the refusal to direct verdict for defendant, to the charge as given, and to the refusal of certain of defendant's requested instructions. A consideration of the criticisms relating to the charge will aid in determining whether there was a case for the jury.

Defendant conceded on the trial that the deduction of the $26,000 item in its return for 1909 was not authorized. The court accordingly properly instructed that the government was entitled to a verdict for at least $260.00 on this account. The substance of the charge otherwise was that the question of fact to be determined was merely whether the deductions made by defendant in its excise tax reports for the years 1909 and 1910, viz. $249,024.54 for the former year, and $239,229.70 for the latter year, were in whole or in part reasonable allowances for depreciation of roadway during those respective years; that if such allowances were reasonable the government is not entitled to recover; that if they were not reasonable the government was entitled to verdict for 1 per cent. of the amounts improperly deducted. The jury was specifically instructed to consider, first, "the depreciation, either physical or functional, in the value of those parts of the roadway which have not been repaired or renewed or replaced"; and, second, "what has been the effect of the repairs, renewals, and replacements that have been made to other parts, and determine whether, after you strike a final balance at the end of the year, the roadway is of greater or less value, or of equal value, than or to that which it was at the beginning of the year," and that if it should be found "that the value of the roadway, its actual value, is as great at the end of the year, after these repairs and replacements have been made for which credit has been given as an expense deduction, then there is no depreciation in value of * * * the roadway, within the meaning of the statute," but that "if, after making such repairs, replacements, and renewals in the different units of the roadway, it should be found that some parts have been made more valuable by the putting in of new parts in place of wornout parts, yet the depreciation in the rest of the roadway, in the deterioration, obsolescence, etc., of other units which have not been changed, and so little done in repairing and replacing that at the end of the year, taking it as a whole, the depreciation in value has exceeded the repairs, replacements, and renewals, so that it is worth less than it was, * * * to that extent the railway is entitled to a deduction of 1 per cent."

The first specific criticism to the charge is that depreciation was made to depend upon the relative value of the roadway "in dollars and cents" at the beginning and end of the respective years. The contention is that the criterion is "earning power," "value for use," not its value to an investor. In point of fact, the court did not use the expression "dollars and cents" in its charge to the jury. Its various expressions

were "value," "net value," "actual value," "real value," doubtless mean-
ing intrinsic value, value in "dollars and cents," as distinguished from
market value, which defendant's testimony showed might be affected
by considerations other than intrinsic value.

The criticism is without merit. Not only is it clear that market
value was not meant, but the criticism loses all point through the
specific admission of defendant's counsel, made upon the trial, that
"the road as a whole, for the purpose of carrying on the business of a
common carrier, was just as valuable at the end of the year as at
the beginning," and by the equally express admission of defendant's
chief engineer, not only to the same effect as that of counsel, but,
further, that it would be worth as much to "any persons that wanted
to buy it for a railroad."

The further criticism is made that "the court refused to permit the
jury to consider depreciation, physical or functional, in the units con-
stituting roadway, track, and structures"; the argument being that, as
"a railroad is a composite property, it is impossible to figure deprecia-
tion of a road as a whole without first considering depreciation of
the units."

The court, however, did not instruct that depreciation of units could
not be considered in determining the ultimate question whether there
was net depreciation in the roadway as a whole. It is true that, after
stating that there would be no depreciation if repairs, renewals, and
replacements had placed the roadway in the same value as at the
beginning of the year, it was said:

"In that sense you should not consider each of the individual units that
enter into the roadway."

But the meaning of that statement was made clear by the paragraph
immediately following:

"It was not intended to have a system of bookkeeping with reference to each
particular cross-tie or each particular rail, but you should look to the value
of the roadway as a whole, comparing its value at the beginning of the year
with its value at the end of the year."

Further evidence of the meaning of the charge appears from the
later use of the term "net value"; also by earlier reference to the mak-
ing of repairs, renewals, and replacements in the roadway, by "taking
out units that had decayed or whose usefulness was at an end and
putting in others, taking out cross-ties, decayed cross-ties, worth-
less cross-ties, and putting in new cross-ties, taking out rails worn out
and putting in new rails, repairing and replacing different units in its
roadway system from time to time," as well as by the instruction that
the jury should consider "depreciation, either physical or functional,
in the value of those parts of the roadway which have not been repaired
or renewed or replaced, then also consider what has been the effect of
the repairs, renewals, and replacements that have been made to other
parts, and determine whether, after you strike a final balance at the
end of the year, the roadway is of greater or less value, or of equal
value, than or to that which it was at the beginning of the year."

The contention on which defendant seems to rest its chief criticism

seems to be that, notwithstanding the roadway as a whole was intrinsically just as valuable at the end of the year as at the beginning of the year; that is to say, although depreciation in given units had been fully overcome by appreciation in others, the railway company would still be entitled to credit for depreciation in such individual units as had depreciated. We think this contention of defendant not sustained by reason or authority, and that the court correctly charged the true criterion. If, as is not entirely clear, it is meant to further suggest that the consideration of functional (as distinguished from physical) depreciation was not allowed by the charge to be taken into account, the suggestion is plainly without merit. Not only did the court define the roadway as including "structures connected with the roadway, such as stations, toolhouses, and matters of that sort," but it included in depreciation a lessening of original values "due to wear and tear, decay, gradual decline from obsolescence—that is, getting out of date and inadequacy." In our opinion, the jury was given the correct rule for determining the existence or nonexistence of depreciation, which accords with the "ordinary and usual sense" of that term "as understood by business men." Van Baumbach v. Sargeant Land Co., 242 U. S. 503, 524, 37 Sup. Ct. 201, 61 L. Ed. 460. To say that property can depreciate without impairment of either intrinsic value or efficiency is to our minds a solecism.

3. *The Refusal to Direct Verdict.*—The sole question in this regard is whether or not there was substantial testimony tending to support the government's contention that there was during the years 1909 and 1910 no net depreciation in the intrinsic value of the roadway and structures considered as a unit. It is not highly important to the determination of this question whether the controversy arose on one theory and was tried on another, nor whether the claimed depreciation would have been allowed under the system of bookkeeping employed by the government, had the charges therefor been set up on the railway company's books. 249 Fed. at page 686, 161 C. C. A. 588.

It appears that defendant arrived at the depreciation charges by estimating the value of the perishable structures as one-third the cost of the road (less equipment and real estate), and then taking 3 per cent. of this one-third value, on the theory that the average life of the various perishable elements was 33⅓ years. Whether or not these depreciation estimates were reasonable was a question for the jury.

In our opinion there was substantial testimony tending to support the government's contention. It appeared that there was expended in round numbers for maintenance of way and structures—that is to say, for repairs, renewals and replacements—for the year 1909 of $1,-600,000, and for the year 1910 of $1,554,000, and that no substantial part of these sums was carried in defendant's accounting as additions and betterments. It was admitted by defendant's chief engineer that the expenditures for 1909 "kept the road in a normal condition to carry on its business," that "its normal condition was a good condition," and that the expenditures "had made good the normal amount of depreciation." There was testimony by competent witnesses of railway experience that "there may be depreciation in the units comprising the

roadway, track, and structures of the railroad, while there is no depreciation in the machine as a whole"; also that it is possible "to maintain the roadway, track, and structures, so that there will be no depreciation if we consider the roadway, track, and structures as a composite whole"; also that "the service life of any normally operated and normally and well maintained railroad is perpetual, and it is maintained in the condition of property serving its purpose by annual renewals and replacements."

The testimony, considered as a whole, tended to support the conclusion that the amounts expended by defendant during the years in question for repairs, renewals, and replacements should and would have fully offset the depreciation in the various units, and that the defendant's railway and structures were, as a whole, maintained throughout the years in question in fully as good condition, and were of fully as great intrinsic value, as at the beginning of the respective years. The jury would have been clearly justified in inferring from the testimony of defendant's chief engineer, taken as a whole, that the value of the roadway had not depreciated during the two years in question; in other words, that the repairs and renewals that had been made were of such a character as to leave the road at the end of each year of value equal to that at the beginning of the year. That officer's testimony so impressed the trial judge, who stated his opinion from the evidence that "there is no reasonable deduction for depreciation established." Defendant did not directly controvert the situation so shown. Its chief, if not its only, reliance seems to have been on the proposition that, in spite of it all, there was inevitable annual depreciation in some of the perishable elements not entirely renewed or replaced, so justifying the contention that for this reason there was depreciation within the meaning of the act, even though the roadway as a whole had not decreased in value. To this argument, as already said, we cannot assent. It follows that the trial judge rightfully refused to instruct verdict for defendant.

Finding no error in the record, the judgment of the District Court is affirmed.