HARDWICK REALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10498.   Promulgated August 22, 1927.

1. In ascertaining gain or loss upon the sale of capital assets, due allowance must be made for depreciation occurring during the period of ownership.

2. Amount of depreciation determined.

*F. S. Bright, Esq.,* and *Brison Howie, Esq.,* for the petitioner.
*A. S. Lisenby, Esq.,* for the respondent.

This proceeding results from the determination by the respondent of a deficiency in income and profits taxes for the calendar year 1920,

in the amount of $10,058. The question involved is the correctness of the action of the respondent in computing the profit on the sale of an apartment house acquired in 1915, and sold in 1920, in reducing the cost thereof by the depreciation deducted on the petitioner's return for years 1916 to 1919, inclusive.

### FINDINGS OF FACT.

Petitioner is a corporation, organized and existing under the laws of the State of New York, having its principal office at No. 41 Park Row in the Borough of Manhattan, City of New York. On November 12, 1915, it purchased premises No. 2 West 120th St., New York City, which is a seven-story-and-basement brick-and-steel apartment house of the type known as semifireproof, for the sum of $254,908.72.

During the year 1915, the receipts from rents exceeded the expenses by the sum of $47.16.

During the year 1916, the receipts from rents and telephones were less than the expenses by $1,031.02.

During the year 1917, the receipts from rents and telephones exceeded the expenses by $308.32.

During the year 1918, the receipts from rents and telephones were less than the expenses by $1,227.42.

During the year 1919, the receipts from rents and telephones exceeded the expenses by $4,739.42.

Receipts and expenditures for each year are calculated exclusive of any deduction for depreciation.

In May, 1920, petitioner sold the premises No. 2 West 120th St., for $269,444.75. In the income-tax returns filed by it during its years of ownership of the property, the following amounts were claimed as deductions for depreciation:

| | |
|---|---|
| 1916 | $5,250.00 |
| 1917 | 6,092.50 |
| 1918 | 5,840.00 |
| 1919 | 5,601.53 |
| Total | 22,784.03 |

Petitioner had no other property nor other source of income except from the building in question. The building was erected about the year 1900.

### OPINION.

MILLIKEN: Counsel for petitioner makes several points in the brief filed in this cause, which, in the light of the now settled law on the question of whether deductions for depreciation are to be made from original cost in determining gain or loss on the sale of properties,

it appears unnecessary to discuss. The points are as follows: (1) Congress has power to tax income and profit only and can not, by any definition, create income and profit where actual income and profit as defined and understood at the time of the Sixteenth Amendment to the Constitution, do not exist; (2) the allowance for depreciation can only be deducted from income, and where there is no income, the depreciation provisions of the statute can not operate; (3) Congress has no power to compel the deduction for depreciation; (4) where there is income, the allowance for depreciation can not exceed the income. The points enumerated are fully answered by the decision of the United States Supreme Court in the case of *United States* v. *Ludey*, 274 U. S. 295. Depreciation is not made dependent on income or the lack of it, but is a sum which should be set aside each year, in order that at the end of the useful life of a building, the aggregate sums will provide an amount equal to the original cost. As the Supreme Court points out in *United States* v. *Ludey, supra*—

The theory underlying the allowance for depreciation is that by using up the plant, a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole originally acquired. The amount of depreciation must be deducted from the original cost of the whole, in order to determine the cost of that disposed of in the final sale of the properties.

A gradual sale of properties by the allowance for depreciation is not dependent on profits, it takes place irrespective of profits. A manufacturing concern might operate its plant and facilities for twenty-four hours each day during a given year, and for business reasons, sell its product at the actual cost of production. Has the failure to earn profits during such year caused depreciation to cease on its plant and facilities? We think not. Also see *Rieck* v. *Heiner*, 20 Fed. (2d) 208, and *Appeal of Even Realty Co.*, 1 B. T. A. 355.

Counsel also submits that in no event should depreciation be more than 1.6 per cent per annum on the cost of the buildings. In the first place, we do not have the cost of the buildings as separate from the land on which situate, but if we did and the depreciation deducted by the respondent for the years 1916, 1917, 1918, and 1919 was in excess of the sums to which petitioner was entitled, or was less than the sum to which it was entitled, it should, no doubt, be adjusted.

In its income-tax returns for the calendar years 1916, 1917, 1918, and 1919, petitioner deducted the amounts for depreciation as set forth in our findings of fact, which are precisely the sums which the

respondent has used in determining the gain derived from the sale of the building in 1920. The secretary and treasurer of petitioner was called as a witness by petitioner. He has been in the real estate business since 1910, engaged in the general real estate brokerage business, buying and selling property for clients, managing property, appraising real estate, and placing mortgage loans. He was secretary and treasurer of petitioner during the years 1916 to 1920, inclusive. He appraised the property when purchased by petitioner in 1915. He has had experience in considering and determining the useful life of buildings and improvements in connection with his work as appraiser. He rendered, under oath, the income-tax returns of petitioner for years 1916, 1917, 1918, and 1919.

He testified, as follows, on cross-examination:

Q. At the time you signed those returns, Mr. Du Cret, what was your opinion as to the annual depreciation sustained on those premises?

A. The depreciation as recited in the return.

Q. The items or amounts of depreciation stated in the return of the Hardwick Realty Company for each of those years, and deductions from gross income thereon then represented, Mr. Du Cret, your then opinion from your then knowledge of the circumstances as to the proper amount of depreciation?

A. Yes.

Q. Were you at all times, during each of those years, in touch with the property and familiar with it?

A. Yes.

Q. You have had charge of the property and its management and control?

A. Yes.

Q. No other person had charge of the property, or its management and control?

A. No.

Counsel for petitioner also called a witness, who first saw the building in 1927, whose views on depreciation were somewhat confused, and who estimated the life of the building was at least 80 years. Despite the fact that the building was 27 years old when seen by the witness, it was his opinion that the structure had suffered practically no depreciation from the time erected.

We are of the opinion that the depreciation taken on the income-tax returns filed by petitioner for the years 1916, 1917, 1918, and 1919, when considered in connection with the qualifications of the officer who caused them to be made reflects the depreciation to which petitioner was entitled and the respondent did not err in this respect.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, PHILLIPS, and VAN FOSSAN.