*666 OPINION.
Arnold:
The petitioner contends that it realized a gain in 1935 of not more than $176.76, which represents a proportionate part of the total depreciation of $1,893.89 on machinery and equipment allowed petitioner prior to the sale thereof. Petitioner further contends that it is entitled to a deduction for depreciation on its buildings during 1935 of $3,853.76, which is less than the amount claimed in its petition.
Petitioner’s contentions are grounded upon the premise that its basis for computing gain on the sale and its basis for computing depreciation on its buildings are the fair market values of these assets when acquired. Petitioner fixes the fair market value of the machinery and equipment when acquired at $128,571.36; it contends that this value or basis should be adjusted by the depreciation allowed petitioner prior to the sale totaling $1,893.89, which gives an adjusted basis for gain or loss of $126,677.47. The sale price on July 1, 1929, being the same as the alleged fair market value of the assets when acquired in 1922, the gain admitted by petitioner equals the total amount of depreciation previously allowed.
The basis for depreciation of the buildings is fixed by petitioner at $92,490.43, with a stipulated life of 24 years. Petitioner arrived at the basic value by allocating the agreed value of land and *667 buildings, $250,000, in accordance with the appraised values of the land and buildings fixed by appraisal engineers on September 8, 1921.[1]
Eespondent contends that the basis for determining gain and the basis for depreciation of the buildings is the cost of the assets to petitioner’s transferor, the Nace Co. Eespondent asserts that the substance of the 1922 transactions was that petitioner delivered its 600 shares of capital stock to the Nace Co. in exchange for the lands, buildings, machinery, and equipment, and that the Nace Co. transferred petitioner’s stock to its three stockholders in cancellation of 600 shares of its own capital stock. Eespondent cites and relies upon our decisions in Briggs-Darby Construction Co., 41 B. T. A. 136, where we denied petitioners a stepped-up basis for depreciation of machinery and equipment, and Paradox Land & Transport Co., 23 B. T. A. 1229, where we held that the basis for depreciation was the transferor’s cost.
The opposing contentions squarely present the question of whether the 1922 transaction was a taxable exchange. With respect to this question petitioner urges that the character of the 1922 exchange is res judicata under the Board’s decision in Forrester Box Co., supra. In that case we held, in determining the basis for gain or loss on the sale in 1923 of one of the assets acquired in the 1922 exchange, that the assets were purchased from the Nace Co., payment being made therefor with petitioner’s capital stock. We denied petitioner any loss on the sale because there was “no evidence in the record to show the value of the stock paid for the” asset.
Petitioner has specifically pleaded that our decision in the foregoing proceeding has become final and that said decision is res judicata of the following determinations: (1) That petitioner acquired the assets in exchange for its capital stock; (2) that said exchange constituted a purchase; (3) that the property was not acquired by petitioner pursuant to a reorganization within the meaning of section 202, Eevenue Act of 1921; and (4) that the cost of the property to petitioner was the fair market value of the stock issued in exchange therefor.
In our opinion petitioner’s plea that respondent is estopped by the decision in the former proceeding to reexamine the character of the 1922 exchange is well founded, Bennett v. Commissioner, 113 Fed (2d) 837. In its opinion in the latter case the' Fifth Circuit, speaking with regard to the plea of res judicata, said:
For, the rule of res judicata does not go on whether the judgment relied on was a right or a wrong decision. It rests on the finality of judgments in the *668 interest of the end of litigation and it requires that the fact or issue adjudicated remain adjudicated. It, in short, is that one, who has permitted a final .judgment to go against him, is estopped, by that judgment, from contending ■elsewhere, against the parties to it and their privies that the fact or issue is ■otherwise than as there adjudged.
See also Tait v. Western Maryland Railway Co., 289 U. S. 620; Leininger v. Commissioner, 86 Fed. (2d) 791; and Pryor & Lockhart Development Co., 84 B. T. A. 687.
Since respondent is estopped from again litigating the character of the 1922 exchange, the evidence adduced to establish the fair market value of the assets exchanged for stock must be considered. Accepting the recognized rule that the fair market value of property is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, the petitioner argues that both parties to the 1922 exchange had full knowledge of the value of the assets. Petitioner asserts that it and the Nace Co. agreed in 1922 that the fair market value of the lands and buildings was $260,000 and that the fair market value of the machinery and equipment was $128,571.36. It is pointed out that these values were agreed upon for the purpose of fixing the rent base and also to fix the purchase price under the options granted in the lease indenture and the supplemental agreement thereto. In addition to the documentary evidence the petitioner offered the testimony of D. Bruce Forrester, who testified that the foregoing amounts were the agreed fair market values between the contracting parties, petitioner and the Nace Co.
The values agreed to for rental purposes and the price fixed at which the assets could be purchased for cash by the lessee or conveyed for preferred stock by the lessor are somewhat less, in the aggregate, than the appraised values fixed by the appraisal engineers on September 8, 1921. But the inferences to be drawn therefrom are more favorable than opposed to petitioner’s contentions, since petitioner does not assert that cost of replacement new, less accrued depreciation, is the equivalent of fair market value. Petitioner’s position is that the exchange was an arm’s length transaction, and, that being so, the values fixed by the contracting parties are the best proof of fair market value. The decided cases support the latter proposition, Kitrell v. United Stales, 79 Fed. (2d) 259, 260; Andrews v. Commissioner, 38 Fed. (2d) 55, 56; John J. Flynn, 35 B. T. A. 1064, 1067; and, since the facts herein establish that the Nace Co. and the petitioner were separate and distinct corporate entities, with separate and distinct stockholding groups, it is a fair inference that each corporation negotiated for its own best advantage.
*669 Bespondent has offered no evidence in opposition to petitioner’s proof that the fair market value of the assets was the agreed value between the parties. His cross-examination of petitioner’s witness did not weaken the valuation placed by the witness on the depreciable assets. Even granting respondent’s assertion that the witness was interested in the pending proceeding, something more than interest is required to destroy the effect of testimony given under oath. The testimony of value here given, it must be remembered, is supported by the purchase price agreed upon by the contracting parties with respect to the possible future sale or purchase of the leased assets. It is our opinion, therefore, that petitioner has established that the cost of the property to it was the value of the stock issued therefor, and that the value of the stock is to be measured by the value of the assets behind it.
With respect to the machinery and equipment the fair market value is $128,511.36, but the fair market value of the land and buildings, $250,000, must be allocated between the land and the buildings. Petitioner proposes that the allocation be made in accordance with the appraised values for land and buildings fixed by appraisal engineers on September 8, 1921. The witness testified that this appraisal was made to establish the value of the properties for the purpose of leasing or renting the same, and to fix the sale price under the options granted the lessor and lessee in the supplemental agreement. True, the agreed rental base and the agreed optional purchase price as to land and buildings were less than their total appraised values, but we agree with petitioner that such values may be used to allocate the fair market value. Such an allocation gives a fair market value for the buildings in 1922 of $92,490.43 which, with a useful life of 24 years, gives an annual depreciation deduction on the buildings of $3,853.76. Since both the aggregate amount of depreciation on buildings claimed by petitioner and allowed by respondent is less than the aggregate amount allowable for the period March 1, 1922, to December 31, 1934, petitioner is entitled to an annual depreciation deduction on its buildings for 1935 and each year thereafter of $3,853.76.
Having determined that the basis to petitioner of its machinery and equipment is cost, the next question is the amount of gain realized from the sale thereof on July 1, 1929. Petitioner claimed it was allowed depreciation of $1,893.89 from 1922 to 1929, and it insists that its adjusted cost base is $126,677.47 ($128,571.36 — $1,893.89). Petitioner contends that, contrary to general experience, its leased machinery and equipment did not depreciate in value during the time it owned the assets and that, therefore, its only gain from the sale is the amount of depreciation claimed and allowed.
*670 In answer, no doubt, to the requirements of section 111 (b) (2) of the Revenue Act of 1928,[2] that the basis be diminished by the amount of the deductions for exhaustion, wear and tear, etc., allowable since the acquisition of the property, the petitioner introduced evidence to show that no depreciation of machinery and equipment in excess of $1,893.89 was claimed or resulted while it owned the property for the reason that the Nace Co. expended $15,000 to $20,000 a year in replacement and repairs. It is asserted that these expenditures not only arrested exhaustion, wear, and tear of the property, but actually increased the value thereof, so that said machinery and equipment were more valuable in 1929 than when acquired in 1922.
Petitioner further asserts that it is well settled that to be entitled to depreciation one must not only own an interest in property, but must also establish a present actual loss.[3] Petitioner argues further that it sustained no present actual loss by the depreciation (exhaustion, wear, and tear) of its machinery and equipment, because at any time during the lease period it had the right to require the lessee to purchase the property for $128,571.36 of class A preferred stock of General Box Corporation, which fact, it is asserted, pegged the salvage value of the machinery and equipment at $128,571.36. Furthermore, since the difference between cost and salvage value at the end of the useful life of the property is the only amount that may be depreciated under the Treasury Department’s regulations (Regulations 101, art. 23 (1)-1), petitioner contends that it sustained no actual loss during any year.
Petitioner also points out that its evidence shows conclusively that there was no loss sustained by depreciation since the General Box Co. paid $128,571.36 for the property in 1929. Petitioner urges that this is not unusual because the Board and the courts have held in numerous instances that “where a lessee agrees to and does maintain, repair, and replace the leased property to the extent that no actual loss falls upon the lessor, no deduction for depreciation is allowable”, and in support thereof petitioner cites numerous au *671 thorities.[4] The other evidence which petitioner says conclusively -shows that no loss was sustained by reason of depreciation in value consists of the appraisals in 1921 and 1929, and the testimony of D. Bruce Forrester.
Petitioner’s argument that its cost basis should be adjusted only by the depreciation allowed, and not by the depreciation allowable, -is untenable. The rule is established by United States v. Ludey, 274 U. S. 295, and many other cases, that the base must be reduced by the aggregate amount of depreciation sustained in order to determine •the gain or loss resulting from the disposition of a depreciable asset. Machinery and equipment used in production become exhausted and worn regardless of replacements, repairs and improvements. As parts are replaced or improvements are added, the depreciation shifts from the old to the new. In the final analysis petitioner’s argument is that appreciation, together with repairs, replacements and improvements, have offset and prevented any actual loss through ■depreciation.
We can not agree. In our opinion each annual rental payment from the Hace Co. represented a partial recovery of petitioner’s investment in the leased machinery and equipment. The expenditures of the Hace Co. had for their purpose the maintenance of the operating efficiency of the box factory. Whether such expenditures resulted in an appreciation in value of petitioner’s property is immaterial, because the nature of the assets involved was such that they gradually became exhausted from use. Ho amount of appreciation in value, which grows out of extrinsic causes, will prevent the exhaustion, wear, and tear which result from the continuous use of machinery and equipment. Petitioner’s argument that depreciation in this instance has been offset by appreciation is not therefore convincing. Even Realty Co., 1 B. T. A. 355.
Heither are we persuaded that petitioner’s situation is similar to those in Atlantic Coast Line Railroad and the Cincinnati Gas & Electric Co., or the other cases hereinabove referred to. The lease indenture executed by this petitioner only required the lessee to “keep all of the leased property in good order and repair”, and to return it upon termination of the lease “in as good order as when received, reasonable wear and tear, * * * excepted.” This lease indenture contemplated that exhaustion, wear, and tear of the machinery and equipment would be borne by petitioner. Ho obligation to make good the depreciation was imposed on the lessee by the *672 indenture. In the cases cited there was a specific obligation placed on each lessee to maintain, repair, and replace the depreciable assets so that they would be returned in as good condition as when received and, accordingly, the decided cases denied the owner-lessors any depreciation deductions.
The probative effect of the appraisals and the oral testimony is to corroborate the appreciation in value resulting from the repairs, replacements, and improvements made between 1922 and the date of sale. The appraisal values represent the cost of reproduction new, less accrued depreciation, which would give effect to extrinsic forces. The oral testimony likewise corroborates the appreciated value of the machinery and equipment when sold. It must be remembered, however, that the sale on July 1, 1929, established this fact by fixing the amount of appreciation that petitioner would realize. Prior thereto any appreciation in value might have been wiped out by competition, by progress in the art, by fear of invasion, by a business depression, or by some other extrinsic cause. Even Realty Co., supra.
The petitioner converted the appreciated value of its machinery and equipment into a money obligation against the General Box Co. for $128,571.36 on July 1, 1929. A portion of this obligation was paid on July 1,1929, and the balance was due in monthly installments of $1,000 each. The problem is what part of the $12,000 received in 1935 represented a return of investment and what part represented realized appreciation. Respondent determined that the entire $12,000 was income and no part thereof a return of investment. The burden of proof rests upon the petitioner to show what part, if any, was a return of capital, and what part was income. If it fails to sustain this burden respondent’s determination must be approved.
In our opinion the petitioner has failed to sustain its burden of proof. We are satisfied that exhaustion, wear, and tear of the leased equipment resulted from the use thereof by the lessee, but the amount of such exhaustion, wear, and tear is not disclosed by the record. Petitioner attempted to limit the amount of depreciation sustained to $1,893.89, the amount allowed, but this gives no consideration to the amount allowable. When it is recognized that this small amount covers depreciation on $128,571.36 of machinery and equipment over a period of seven and one-half years, the weakness of petitioner’s position is at once apparent. Failure to establish some reasonable allowance for depreciation leaves us no alternative but to approve respondent’s determination.
The stipulated taxable income of $7,957.62 for 1935 should be adjusted by the gain realized on the sale and the depreciation sustained on its buildings, and the deficiency recomputed accordingly.

Decision, will be entered imd&r Rule 50.

 (b) Adjustment op Basis. — In computing the amount of gain or loss under subsection (a) — ■
*******
(2) The basis shall be diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion which have since the acquisition of the property been allowable in respect of such property under this Act or prior income tax laws: * * *

 Weiss v. Wiener, 279 U. S. 333; Commissioner v. Terre Saute Electric Co., Inc. (C. C. A., 7th Cir.), 67 Fed. (2d) 697; certiorari denied, 292 U. S. 624; Georgia Railway & Electric Co. v. Commissioner (C. C. A., 5th Cir.), 77 Fed. (2d) 897; certiorari denied, 296 U. S. 601; Terre Saute Electric Co., 33 B. T. A. 975; affirmed on this point, 96 Fed. (2d) 383.

 Atlantic Coast Line Railroad Co. v. Commissioner (C. C. A., 4th Cir.), 81 Fed. (2d) 309; Cincinnati Gas & Electric Co. v. Commissioner, 36 B. T. A. 1122; appeal dismissed (C. C. A., 4th Cir.), 105 Fed. (2d) 1016; Mississippi River & Bonne Terre Railway, 39 B. T. A. 995; Commissioner v. Terre Haute Electric Co. (C. C. A., 7th Cir.), 67 Fed. (2d) 697, affirming on this point, 24 B. T. A. 197; Nashville, C. & St. L. Ry. Co. v. United States (C. C. A., 6th Cir.), 269 Fed. 351; A. Wilhelm Co., 6 B. T. A. 1.