THE CINCINNATI GAS & ELECTRIC COMPANY, PETITIONER, ET AL.,[1] *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44351, 44352, 44353, 46903, 49614, 50424.

Promulgated December 9, 1937.

*Douglas M. Moffat, Esq., William D. Whitney, Esq., Richmond
H. Ritterbush, Esq., James A. Councilor, C. P. A.,* and *John E.
Brown, C. P. A.,* for the petitioners.

*Philip M. Clark, Esq.,* and *Stanley B. Pierson, Esq.,* for the respondent.

### OPINION.

HILL: Respondent determined deficiencies in the income tax liability of the petitioners as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Cincinnati Gas & Electric Co. | 49614 | 1923 | $103,415.23 |
| Do. | 50424 | 1924 | 96,063.90 |
| Do. | 50424 | 1925 | 124,609.56 |
| Columbia Gas & Electric Corporation | 44351 | 1923 | 23,667.53 |
| Gas & Electric Appliance Co. | 44352 | 1923 | 6,200.45 |
| Union Gas & Electric Co. | 44353 | 1923 | 40,402.97 |
| Cincinnati Gas Transportation Co. | 46903 | 1927 | 694.42 |

The parties stipulated in the case of the Cincinnati Gas Transportation Co., Docket No. 46903, that there is no deficiency and no overpayment.

At the hearing the parties also filed a stipulation in the cases of the Columbia Gas & Electric Corporation, the Gas & Electric Appliance Co., and the Union Gas & Electric Co., Docket Nos. 44351, 44352, and 44353. Paragraph 13 of that stipulation provides that the net income of the Union Gas & Electric Co. for the calendar year 1923, as determined by respondent, is to be reduced by such amount as shall be found by the Board to constitute the Federal in-

---

[1] Proceedings of the following petitioners are consolidated herewith: Columbia Gas & Electric Corporation, The Gas and Electric Appliance Company, The Union Gas & Electric Company, and Cincinnati Gas Transportation Company.

come tax liability of the Cincinnati Gas & Electric Co., Docket No. 49614, for the calendar year 1923. With the exception of the adjustment for taxes, the stipulation disposes of all issues between the parties in the cases mentioned, and it is agreed that the Board may enter judgments therein under Rule 50, after the entry of judgment in Docket No. 49614. Subsequent to the hearing and on April 6, 1937, the parties filed a supplemental stipulation in Docket Nos. 44351, 44352, and 44353.

The stipulations of the parties leave for consideration here only the cases of the Cincinnati Gas & Electric Co., Docket Nos. 49614 and 50424. In those cases the parties filed a stipulation of facts, together with numerous and voluminous exhibits, which stipulation disposes of all issues raised by the original and amended pleadings, with the exception of a single issue of law hereinafter discussed. All stipulations above mentioned, and exhibits thereto, are here adopted in full as our findings of fact in the respective cases to which they pertain, and will be given effect in the recomputation of the deficiencies under Rule 50, where applicable.

The issue for decision is whether or not the Cincinnati Gas & Electric Co., hereinafter called petitioner or lessor, is entitled to deductions from gross income for depreciation or obsolescence in respect of physical properties owned by it during the taxable years 1923, 1924, and 1925, which properties had theretofore been demised under a long term lease contract.

The petitioner, the Cincinnati Gas & Electric Co., is an Ohio corporation, organized in 1837. On the date of September 1, 1906, petitioner and the Union Gas & Electric Co., hereinafter referred to as the lessee, entered into a lease contract whereby petitioner demised to the latter company, its successors and assigns, subject to the terms of the lease, for a period of ninety-nine years and one month from September 1, 1906, to October 1, 2005, all of its property, real, personal, and mixed, constituting its gas and electric plants for light, heat, power, and fuel purposes.

In the summer of 1914, petitioner proposed that the lessee construct a new electric generating station, deemed necessary to meet increasing demands for power. The lessee refused to finance the construction of the proposed generating station, and in 1916 petitioner and the lessee entered into an agreement dated April 1, 1916, wherein were set forth the provisions of the lease of 1906 in so far as it was agreed that the same should continue in force, together with such modifications as were deemed necessary by reason of conditions that had arisen since the execution of the 1906 contract.

Under date of January 1, 1921, petitioner and the lessee entered into an agreement, embodying in that one instrument all provisions

of the lease of 1906, as modified by the lease of 1916, in so far as the same were to continue in force, together with such modifications as were deemed necessary because of conditions arising since 1916. The agreement of January 1, 1921, remained in full force and effect throughout the taxable year 1923, and provided in part material here as follows:

Article second of the agreements provided that the lessee was to pay as rent, (1) an amount equal to 5 percent upon the outstanding capital stock of the lessor, whether then outstanding or thereafter issued with the consent of the lessee; (2) the sum of $27,500 payable in quarterly installments to cover the cost and expense of maintaining the organization of the lessor; (3) amounts equal to the interest on the first and refunding mortgage bonds and interest on the prior lien bonds of the lessor, including the interest, or payments in lieu of interest, on bonds held uncanceled in the sinking funds under the first and refunding mortgage and the prior lien and refunding mortgage; and also amounts equal to the annual sinking fund installments payable under such mortgages; (4) all taxes and charges imposed upon the lessor on account of its property, capital stock, dividends, rents, and income; (5) rents for the use or occupation of any part of the demised premises; and (6) office quarters for the lessor to be furnished without charge in the lessee's office building.

Other material provisions of the agreements are as follows:

ARTICLE FOURTH. Subject to Article Eight, the Lessee will maintain and preserve the demised premises as a going concern, will keep the demised premises in good order and repair as a first class and efficient gas and electric plant for light, heat, power and fuel purposes, and will operate the demised premises in good faith and to the best of the Lessee's ability so as to meet all reasonable demands of public and private consumers and protect and preserve the rights, privileges, franchises and contracts of the Owner; all of the foregoing to be done at the expense of the Lessee; but the foregoing covenant shall not be construed to require the Lessee to make (a) expenditures for renewals or replacements otherwise than as may be required by Article Eight or (b) expenditures for extensions of the demised premises or for additions thereto or to the operating plants or the equipment thereof or for betterments or improvements, or for Capital Expenditures otherwise than as may be required by Article Eighth, which makes provision (which shall be deemed exclusive) for all Capital Expenditures as therein defined.

ARTICLE FIFTH. The Lessee, out of the gross receipts of the Lessee from the operation during each year of the demised premises, will set aside the following amounts, viz:

For the year ending April 1, 1921, and on or before such day in each year, two per cent. of such gross receipts, but not less, however, than one hundred thousand dollars.

Such amounts shall constitute a fund (hereinafter termed the Depreciation Fund) and shall be applied in accordance with Article Eighth. Amounts in the Depreciation Fund shall be held by the Lessee separately until so used. * * *

All betterments, extensions, improvements and additional property which shall be acquired by the use of the Depreciation Fund shall be the property of the Owner, and shall constitute part of the demised premises.

\* \* \* \* \* \* \*

ARTICLE EIGHTH. All expenditures for the acquisition of lands, easements, and other rights or interests in real property, or for the acquisition or construction of extensions, betterments or improvements to the demised premises, or for the equipment of the demised premises, or for any other purpose whatsoever which under the regulations, if any, at the time in force, of the Public Utilities Commission of the State of Ohio or other commission having authority in the premises \* \* \* may properly be chargeable against capital and to the extent they may be so chargeable are hereinafter termed Capital Expenditures. For the purpose of this Article, only such expenditures shall be deemed chargeable against capital for which capital in the form of mortgage bonds may be issued, \* \* \* All such expenditures, to the extent that they can not so be properly charged to capital are hereinafter termed Non-Capital Expenditures. Non-Capital Expenditures for any calendar year so far as they are for renewals or replacements, shall be made out of the Depreciation Fund so far as it shall suffice for the purpose and so far as it shall not suffice, shall be borne by the Lessee. The Depreciation Fund shall then be applied toward the Capital Expenditures for such calendar year and all Capital Expenditures for which the Depreciation Fund shall not suffice, the Owner will bear as hereinafter stated. The Owner from time to time, at the request of the Lessee, will pay:

(a) as to all Capital Expenditures made or incurred for extraordinary replacements at any time necessary by reason of earthquake, flood or other Act of God, \* \* \* against which insurance is not customarily written by standard insurance companies, the whole thereof;

(b) as to all Capital Expenditures made or incurred on or after the date hereof, or prior thereto and not heretofore paid by the Owner to the Lessee \* \* \* the whole thereof;

(c) as to all other Capital Expenditures made or incurred on or after the date hereof or prior thereto and not heretofore paid by the Owner to the Lessee, eighty (80) per cent thereof;

The balance of said Capital Expenditures in the foregoing clause (c) shall be paid by the Lessee.

But the foregoing expenditures in (a), (b) and (c) are to be paid by the Owner only so long as there are funds available from the proceeds of the issue of Bonds under the First and Refunding Mortgage or of Prior Lien Bonds under the Prior Lien and Refunding Mortgage or of notes secured by bonds of either of said issues.

\* \* \* \* \* \* \*

All betterments, extensions, improvements and additional property in respect of the cost of which, or of any part of the cost of which the Owner and Lessee shall make payment pursuant to this Article shall on such payment become the property of the Owner and shall be deemed a part of the demised premises.

\* \* \* \* \* \* \*

Under date of January 1, 1924, petitioner and the lessee, in order to provide for additions to the demised premises and for the extension of service to additional territory and other matters, entered into an agreement which set forth therein the provisions of the lease of 1906, as modified by the agreements of 1916 and 1921, in so far as

the same were to be continued in effect, together with certain further modifications. The contract of January 1, 1924, remained in force and effect throughout the taxable years 1924 and 1925. Such contract did not modify the agreement of 1921, in respect to the provisions set forth above, in any manner material here, except that article fifth as amended required the lessee to set aside for the year ending April 1, 1924, and for each year thereafter, a minimum depreciation fund of $250,000.

The legal principles applicable to the matter in controversy here appear to be well settled by prior decisions of the Board and the courts, and the parties so concede. Difficulty arises only in their application. The issue presented is narrowed to the single question whether petitioner, as lessor, itself suffered the loss resulting from depreciation of the leased properties in the taxable years, or whether such loss was made good to it by the lessee. If petitioner sustained the loss, without compensation therefor or reimbursement by the lessee, petitioner is entitled to the deductions claimed by it but denied in whole by respondent. If it did not sustain such loss, then respondent's determination must be approved. The amounts of the deductions, if allowable, have been stipulated by the parties.

Solution of the issue depends upon a proper construction of the provisions of the lease contracts referred to above. Under article fifth of the agreements of 1921 and 1924, in effect during the taxable years, the lessee at its expense was obligated to "maintain and preserve the demised premises as a going concern", and to "keep the demised premises in good order and repair as a first class and efficient gas and electric plant." This obligation, of course, did not go to the extent of placing upon the lessee losses resulting from depreciation. While keeping the property in good order and repair would tend to extend the period of its useful life, repairs alone, no matter how carefully and extensively made, could not fully offset the effects of depreciation. Ultimately the useful life will be terminated through exhaustion, wear and tear. When that point has been reached, the property must then be renewed or replaced.

However, in the instant case, all such renewals or replacements were to be paid for by the lessee, and when made became the property of the lessor and a part of the demised premises, to be maintained, repaired, and replaced by the lessee during the term of the lease. By article fifth of the contracts, the lessee was required to set aside, out of its gross receipts from operation of the property, a so-called depreciation fund consisting of 2 percent of the gross receipts, and by article eighth it was provided that all expenditures for renewals or replacements should be made out of the depreciation fund so

far as sufficient for that purpose, and so far as insufficient should be borne by the lessee. It appears from the record that the period of time covered by the leases was far in excess of the useful life of the depreciable property involved, and that petitioner's property, which was in use during the taxable years, will have become worn out and replaced by the lessee probably several times prior to expiration of the leases. It seems clear, therefore, in so far as concerns the property in use during the taxable years 1923, 1924, and 1925, since such particular property will be worn out and replaced by the lessee long prior to termination of the lease in the year 2005, no part of the loss from depreciation sustained in the taxable years will fall upon the lessor, petitioner herein.

Whether, and if so to what extent, petitioner will ultimately sustain a loss on account of depreciation of the property last installed by the lessee as renewals or replacements, and which property will have become deteriorated through exhaustion, wear, and tear to some degree at the expiration of the leases, we do not know and need not here attempt to inquire. Such loss, if any, as may be allowable to petitioner in that connection should be spread over the life of the property involved, but in no event is deductible in the taxable years before us as depreciation sustained on the property in use in those years.

In addition to the foregoing, it must be held that petitioner sustained no loss on account of depreciation of its physical properties in the taxable years for which it was not compensated by the lessee, because of the fact that the lessee was required to make, and did make, expenditures of its own funds for "betterments, extensions, improvements and additional property", all of which immediately became the property of petitioner and a part of the demised premises. A portion of such expenditures was required to be made directly by the lessee. The balance of all expenditures for capital assets was required to be made by petitioner in the first instance, but only out of the proceeds from the sale of its bonds, and the lessee was obligated to pay both the interest and sinking fund installments due on the bonds. Apparently this arrangement was made to enable the lessee to finance the cost of additions and betterments through the issuance of bonds secured by mortgages on the leased properties, but it is obvious that the cost of all the capital acquisitions is ultimately to be borne wholly by the lessee, as well as the expense of subsequent repairs, maintenance, and replacement of the additional property. The amounts required so to be expended by the lessee were far in excess of the deductions for depreciation claimed by petitioner. The lessee more than restored the capital investment

of petitioner lost through depreciation in the taxable years. See *A. Wilhelm Co.*, *infra*, where, we said, in the light of similar facts:

The revenue act provides that in computing net income a deduction may be taken of a reasonable allowance for exhaustion, wear and tear. What is a reasonable allowance must be determined from all the facts and circumstances. In the peculiar circumstances here involved, considering that the lessee was bound to make good all depreciation by replacements or additions, it is our opinion that no allowance could be justified as reasonable.

Deductions for depreciation were denied to the lessor in *A. Wilhelm Co.*, 6 B. T. A. 1; *Georgia Railway & Electric Co.* v. *Commissioner*, 77 Fed. (2d) 897; certiorari denied, 296 U. S. 601; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730; affd., 81 Fed. (2d) 309; certiorari denied, 298 U. S. 656, and other cases referred to therein. Despite differences in the provisions of the leases, we think the controlling facts in the cited cases are substantially the same as in the cases at bar.

In *A. Wilhelm Co.*, the lessee agreed to return assets of as great value as then existed, and during the taxable year made repairs and installed new equipment of a value in excess of depreciation. In the *Georgia Railway & Electric Co.* case, the lessee was bound to maintain the property in its then state of efficiency, good order, repair, and condition, and to furnish at its own cost all new equipment. In *Atlantic Coast Line Railroad Co.* the lessee was obligated, at its own cost and expense, to keep up, repair, and renew the leased properties and return the same to the lessor at expiration of the lease in good order and condition, ordinary wear and tear excepted, but all additions and betterments were to be paid for in bonds and/or stock of the lessor at market prices. In the present proceedings, the lessee is required (1) to maintain, preserve, and keep the demised premises in good order and repair as a first class and efficient gas and electric plant; (2) to make expenditures out of its own funds for all renewals or replacements; and (3) to pay out of its own funds the cost of all additions and betterments. Thus, petitioner will have returned to it at the expiration of the lease assets of a value greatly in excess of the value of its plant in 1906.

Petitioner cites and relies upon the decisions in the following cases, where the deductions for depreciation were allowed to the lessor: *Richmond Belt Railway Co.*, 13 B. T. A. 1291; *Terminal Realty Corporation*, 32 B. T. A. 623; and *Gulf, Mobile & Northern Railroad Co.* v. *Commissioner*, 83 Fed. (2d) 788; certiorari denied, 299 U. S. 574. The facts, we think, distinguish the cited cases from the present proceedings.

In the first case cited by petitioner, the lease was nothing more than an operating agreement, which might be terminated upon 60 days' notice, and the rental to be paid was a share of the gross

income. The lessees were only obligated to maintain the property in good repair and operating conditions, and were not required to pay for renewals or replacements, nor for additions or betterments. There, clearly, the loss from depreciation fell upon the lessor.

In *Terminal Realty Corporation*, the property was leased for a period shorter than its probable physical life, and the lessee was required merely to maintain the property in a good and safe condition and to make necessary repairs and replacements. Since the lease covered a period less than the useful life of the property, replacements, if any, made by the lessee could not be expected to offset the effects of depreciation, and hence the lessor would suffer a loss on account of depreciation resulting from the use of the property in the taxable years. So, deductions for depreciation were allowed to the lessor in order to spread such loss over the years in which it was in fact sustained. An entirely different situation is present in the instant case.

In *Gulf, Mobile & Northern Railroad Co.*, *supra*, the court pointed out in its opinion that nothing was said in the leases about the condition in which the property was to be returned to the owner. The lessees were not required to return the property in as good condition as when received, or to pay a reasonable allowance for its exhaustion, wear and tear, and obsolescence. Here petitioner is more than compensated for any loss on such account.

On the issue submitted for decision, respondent's action is approved.

Reviewed by the Board.

> *In Docket No. 46903, judgment of no deficiency and no overpayment will be entered. In the remaining docket numbers, judgment will be entered under Rule 50.*

DISNEY concurs only in the result.

BLACK dissents.