HAILEY-OLA COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30962.    Promulgated November 24, 1931.

*Charles H. Garnett, Esq.,* for the petitioner.
*Elden McFarland, Esq.,* for the respondent.

896

OPINION.

LANDSON: The petitioner alleges that it is entitled to a deduction for depreciation of its plant, equipment and development in an amount greater than that allowed by the respondent and that such deduction should be computed on a unit-of-production basis. In this record there is no evidence whatever as to the remaining useful life or the salvage value of petitioner's depreciable assets, which are necessary elements for a computation of deductions for depreciation on either a unit-of-production basis or by the straight method. *Kehota Mining Co.*, 3 B. T. A. 885; *Grand River Gravel Co.*, 22 B. T. A. 1124. The respondent's determination must be approved. *Bishoff* v. *Commissioner*, 27 Fed. (2d) 91; *Rouss* v. *Bowers*, 30 Fed. (2d) 628; certiorari denied, 279 U. S. 852; *Rieck* v. *Heiner*, 25 Fed. (2d) 453; *Atlantic Casket Co.* v. *Rose*, 22 Fed. (2d) 800.

The respondent has allowed a deduction for depletion based on cost of petitioner's coal leases in 1905. The petitioner contends that it is entitled to compute such deduction on the fair market value at March 1, 1913, which it alleges was greatly in excess of cost. The evidence of March 1, 1913, value consists of the petitioner's net earnings, both prior and subsequent to March 1, 1913, a valuation schedule filed by the petitioner with the respondent for the taxable years 1918, 1919 and 1920, and the testimony of six expert witnesses, whose opinions of value ranged from nothing to $450,000. After careful consideration of all competent evidence, we are of the opinion that on March 1, 1913, petitioner's leases had a fair market value of $150,000. Since the law under which the petitioner acquired a lease on an additional 640 acres in 1918 had not been enacted at March 1, 1913, such acquisition has been disregarded as an element of value as of that date.

In his brief, counsel for the respondent argues that we must affirm his computation of depletion for lack of proof, inasmuch as the petitioner has failed to establish the estimated recoverable coal

reserve of the additional 640-acre lease acquired on December 4, 1918, which the respondent says makes it impossible to determine the estimated reserve of recoverable coal as of the beginning of the taxable year. The Revenue Act of 1918 provides, in section 234 (a) (9), that in computing net income there shall be allowed as a deduction "a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case." We do not think the respondent has made "a reasonable allowance" for depletion. Depletion deductions are never exact, but are based on an estimate of the recoverable mineral. We have in the record sufficient facts to enable us to estimate the recoverable coal in the additional 640 acres, and since it is clear that petitioner is entitled to a deduction for depletion greatly in excess of that allowed by the respondent, we feel justified in making such an estimate.

The parties have stipulated the estimated recoverable reserve at March 1, 1913, and the production from that time to the end of the taxable year. We have found the March 1, 1913, value to be $150,000. The record contains exhibits showing total production of the original leases, covering approximately 4,000 acres, from the time mines were opened until March 1, 1913, in the approximate amount of 2,042,000 tons. The estimated recoverable reserve at March 1, 1913, was 2,740,000 tons. Combining the production prior to March 1, 1913, with the reserve at that date, we have a reasonable estimate of the recoverable tonnage contained in the 4,000 acres before any mining was done thereon. Applying such reserve per acre of 1,195 tons, computed for the 4,000-acre tract, to the 640 acres acquired in 1918, we arrive at a figure of 765,000 tons as the reserve to be added in December, 1918. We think a reasonable allowance for depletion may be computed on the value which we have found by using for the reserve at the beginning of the year a figure determined by adding to the stipulated reserve at March 1, 1913, the estimated reserve for the 640 acres, and deducting therefrom the number of tons produced from March 1, 1913, until the beginning of the taxable year.

The respondent has reduced petitioner's invested capital by $36,884.62, which amount, he says, represents a deficit resulting from the payment of dividends in excess of earnings. The only evidence introduced by petitioner on this issue consists of transcripts from its general ledger of the surplus and dividend accounts covering the period from January 1, 1919, to December 31, 1921. As of January 1, 1919, the surplus account shows neither a deficit nor a surplus. Unexplained entries in the account for 1919 leave a balance as of December 31 of $303,127.05. There is nothing to explain the nature

of such entries—whether they represent earnings or appreciation of assets. In the deficiency letter it is clear that the surplus account was not accepted by the respondent as being correct. In the absence of other proof the respondent's determination must be approved.

Prior to the taxable year the petitioner made advances to the Texas Coal Company which exceeded that company's paid-in capital and surplus. On July 15, 1920, it acquired the capital stock of the Texas Coal Company in payment of such advances and in consideration of the assumption by petitioner of the liabilities of the Texas Coal Company. The consideration moving from petitioner exceeded the paid-in capital and surplus of the Texas Coal Company. Accordingly, the petitioner's invested capital was not affected. *Grand Rapids Dry Goods Co.*, 12 B. T. A. 696.

*Decision will be entered under Rule 50.*