ROBERT M. HARRISS, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ABBELINE C. HARRISS, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99993.   Promulgated July 16, 1941.

*Warner Pyne, Esq.,* and *Harold G. Wentworth, Esq.,* for the petitioner.

*W. Frank Gibbs, Esq.,* for the respondent.

1000

OPINION.

LEECH: Petitioner sustained a loss upon the sale of the Texas farm in 1933 in the amount of $49,100.41. The sole issue as to the deficiency for 1933 is whether this loss was an ordinary or capital loss.

This issue is one of fact. Petitioner contends that he has been regularly engaged for many years in the real estate business, buying and selling improved and unimproved properties, and that this farm was purchased in the ordinary course of that business and held for sale to customers. Although it is admitted that his principal business is his cotton business with Harriss & Vose, this, of course, does not preclude him from carrying on the other business of buying and selling real estate in which his purchases, if held as a stock in trade for sale to customers in the regular course of that business, would not consti-

tute capital assets under section 101 (c) (8) of the Revenue Act of 1932.[1] *Marsch* v. *Commissioner*, 110 Fed. (2d) 423.

The testimony as to petitioner's activity over a long term of years in real estate may be sufficient to show that during this time he was carrying on a real estate business and that many of the properties purchased were held for sale by him in the course of that business. However, the facts in connection with his acquisition of an interest in the La Salle County, Texas, farm does not indicate to us that this property was acquired as an incident in the carrying on of his real estate business and held for sale to customers.

Petitioner, it seems, purchased this farm together with his four brothers, each taking a one-fifth interest. It was not cleared. They took steps to clear and improve it for the purpose of carrying on extensive farming operations. These continued for some years with one of the brothers in active charge and after his death the farm was leased as a revenue-producing property. It was not until 1933, 13 years after the acquisition of this property, that petitioner sold his one-fifth interest and then, it is noted, that the sale was to one of his brothers.

This does not appear to be a case of a property purchased as an incident of a business carried on by petitioner of buying and selling real estate. We think it was rather an expenditure by petitioner and his four brothers in the organization and operation of a business of farming.

It is, accordingly, held that petitioner's one-fifth interest in the La Salle County farm constituted a capital asset and the loss realized by him as stipulated is a capital loss allowable to the extent of 12½ percent.

The second issue is whether respondent erred in increasing petitioner's income for 1934 by one-half of the total gain of $72,747.67 which respondent contends he realized with two associates in carrying on the purchase and sale of cotton futures contracts.

The findings of fact disclose the method of operation of petitioner and his two associates, Tarver and Smith, in their purchase of futures contracts which, when the delivery date approached, were sold and a similar number purchased at the market on that date, for delivery at a more subsequent date. It is petitioner's contention that in the sale of such futures contracts the profit from such sales, although credited to his account, did not constitute realized income because

---

[1] SEC. 101. CAPITAL NET GAINS AND LOSSES.

(c) DEFINITIONS.—For the purposes of this title—

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

it was merely an incident in a definite plan under which a new commitment was made simultaneously which, under the usage and custom of the cotton business, precluded his withdrawal of the profit realized on such sales. He contends that these transactions were in the nature of hedging operations and subject to the rule followed in *Farmers & Ginners Cotton Oil Co.*, 41 B. T. A. 1083, and *Ben Grote*, 41 B. T. A. 247. But here, petitioner and his associates were not selling futures against the purchase of "spot" cotton. Their only sales were futures contracts which they owned. Their position in the market was always long under their method of operation, and the transactions were purely speculative.

Moreover these sales of futures contracts can not be considered as a part of the concurrent purchase of a similar number of futures contracts for a more distant delivery date. In each instance when a sale was made and a profit realized it was unquestionably subject then to the absolute control and enjoyment of petitioner and his associates except for their voluntary action in carrying out another transaction of purchase under which the realized profit was to be held as a deposit of guarantee. See *Corliss* v. *Bowers*, 281 U. S. 376. In every sale petitioner and his associate could have closed the account without another purchase. In fact this was actually done after one of the sales, resulting in a profit of $7,829.50. That amount is a part of the total of $72,747.67 which respondent contends was realized by petitioner and his associates. As to this item, petitioner now admits that it constituted a realized gain and that he is taxable upon his one-half interest therein.

To sustain petitioner in his contention would be to hold that one who derives a gain may postpone its realization and recognition as such by concurrently entering into another contract under which that gain is pledged. We agree with the reasoning of the court in the case of *Valley Waste Mills* v. *Page*, 115 Fed. (2d) 466; certiorari denied, 312 U. S. 681. There the same question arose upon facts almost identical with those here. The Circuit Court there said:

It is appellant's contention that taxable gains or deductible losses from its transactions resulted only when it, in closing out a cotton contract, did not simultaneously purchase another contract for the future delivery of a like amount of cotton; but we cannot accept this view under the facts set forth in the agreed statement. There is no dispute about the profit that was made on these purchases, and the fact that other contracts for the purchase of an equal quantity of cotton of the same grade, staple, and character were simultaneously made by it is not sufficient to relieve the appellant of the tax upon the profit actually realized upon the contract which was finally closed out during the taxable year.

Respondent is sustained on this issue.

The third issue is the propriety of respondent's action in including in income for 1934, $7,013 constituting commissions credited to petitioner upon the books of Harriss & Vose as his share of the commissions charged by that company to customers on contracts which had been personally guaranteed by petitioner.

Of the total amount so credited we have found that $4,845 was commissions credited to petitioner's account in connection with certain cotton transactions executed for Frierson & Co. The remainder of the commissions is not identified with any particular account. There is no evidence indicating that petitioner was restricted in his absolute control and enjoyment of them when credited to him. We think that they were income realized by petitioner in 1934. See *Corliss* v. *Bowers*, *supra*.

However, as to the credit of $4,845 a different condition exists. It is clearly established that, although these commissions were credited to petitioner's account, they were not subject to his withdrawal because of the fact that the Frierson account did not show an equity in excess of those commissions. It is true that they were entered upon the books as a credit due him. But whether he would ever receive them depended upon the Frierson account being closed without a liability on the part of petitioner under his guarantee or that the account, because of a market rise, showed such an equity, or paper profit, that Harriss & Vose would voluntarily permit their withdrawal. Neither of these conditions occurred. The evidence discloses that, although these commissions were credited, petitioner was advised that they were not available to him. Under such conditions, we conclude they can not be considered as subject to his unfettered use and therefore realized by and taxable to him. See *Corliss* v. *Bowers*, *supra*.

The last issue involves petitioner's claim of a deductible loss in the amount of $43,935.22 alleged to have been sustained in 1934 on his investment in stock of the One and Three South William Street Building Corporation or in property on Long Island acquired by himself and brother, the title to which was held by that corporation for them. Petitioner argues that occurrences in the year 1934, to wit, the threat of foreclosure of the mortgage held by the Brooklyn Trust Co., the refusal by petitioner's brother to bear any further expense in connection with the property, his endorsement and delivery of his shares of stock in the corporation to petitioner, and the refusal by the trust company to accept petitioner's offer of a transfer of the property in satisfaction of the mortgage, fix and identify a loss as occurring in that year.

It is not entirely clear whether petitioner's position is that the basis for computing the amount of his loss is the value of his stock-

holding in the corporation or his investment in the property, disregarding the corporate entity and treating the property as personally owned by himself and his brother. His computation of the amount of the loss would appear to be upon the latter basis, since it includes not only the item of the cost to him of his stock in the corporation which was the original cost of the property when acquired, but also the expense borne individually by him since that time.

Undoubtedly, the corporation was used merely for the purpose of holding title for petitioner and his brother. It had no income, kept no accounts and the expenditures by petitioner and his brother for taxes, mortgage interest, and attorneys' fees were never charged as advances by them to the corporation but as individual expenditures on their own account in connection with property owned by them. In fact, petitioner appears to have deducted, individually, taxes paid by him on the property. Even for the year 1934, involved here, in arriving at the deficiency, respondent has allowed the deduction of amounts in taxes paid on this property by petitioner personally and claimed on his return.

Under these conditions we think the issue is resolved by whether the property could be considered as having become worthless in 1934 and thus support a loss then realized. Cf. *Archibald R. Watson*, 42 B. T. A. 52. Petitioner argues that, for all practical purposes, he abandoned the property in 1934 and the loss was then realized, as in *W. W. Hoffman*, 40 B. T. A. 459.

However, in the *Hoffman* case, the taxpayer refused to pay either taxes, insurance, interest, or other charges. The amount of these then owing totaled a large sum and the value of the property was far below the amount of the outstanding mortgage. Here, at the close of the taxable year, 1934, there was no indebtedness against the property other than the mortgage of $100,000. Petitioner had paid all arrears in taxes and interest. He has continued to pay these charges since that time, and it does not appear that as of that date the value of the property was less than the outstanding mortgage.

It is further urged by petitioner that under the rule in *DeLoss* v. *Commissioner*, 28 Fed. (2d) 803, the loss must be considered as sustained in 1934, since the record reveals that the value of his investment was then extinct and therefore no sale or disposition of the property was necessary in order to determine it as having been then realized. Under this edict, however, no deductible loss occurred in 1934. The evidence indicates that if the investment was worthless in that year its value was even less in prior years. In fact, the evidence indicates that in 1934 there had been improvement in the market value of the property over prior years. In 1934 the existence or effectiveness of restrictions upon apartment construction

thereon no longer existed. Certain of petitioner's valuation witnesses testified that the value of the property in 1934 was less than it was in 1928, but these witnesses valued the property at only $69,000 in 1928, which was far less than the amount of the mortgage. They agreed that its value in 1933 was less than that in 1928. Thus, even if it could be held that petitioner realized a loss through diminution in the value of the property, (see *Rhodes* v. *Commissioner*, 100 Fed. (2d) 966), it was sustained long prior to the taxable year here involved and, of course, can not be postponed.

No deductible loss was realized in 1934.

*Decision will be entered under Rule 50.*