Anthony Lamontia and Angeline Lamontia v. Commissioner.
Lamontia v. Commissioner
Docket No. 51456.
United States Tax Court
T.C. Memo 1956-149; 1956 Tax Ct. Memo LEXIS 144; 15 T.C.M. (CCH) 744; T.C.M. (RIA) 56149; June 28, 1956
*144 In 1949 petitioners sold 7 lots of real estate which they had acquired for investment purposes in past years. Held: The lots were not held primarily for sale to customers in the ordinary course of business within the meaning of section 117, Internal Revenue Code of 1939, and respondent erred in taxing the gain realized as ordinary income. Held further: Respondent's determination that the amount received in 1949 upon the sale of certain furniture and fixtures was taxable as long-term capital gain, approved. Martin A. Rini, Esq., Bulkley Building, Cleveland, Ohio, for the petitioners. Donald G. Corley, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion. BRUCE, Judge: Respondent determined a deficiency of $1,251.70 in petitioners' income tax for 1949. The two questions for decision are (1) whether the gain from the sale of seven parcels of real estate resulted in ordinary income to the petitioners, and (2) whether petitioners realized capital gain from the sale of furniture and fixtures used by them in their business. Findings of Fact Some of the facts have been stipulated and are adopted herein. Anthony and Angeline Lamontia are *145 husband and wife who resided in University Heights, Ohio, during 1949 and who presently reside at 15001 Shoreacre Drive, Cleveland, Ohio. For the calendar year 1949 they filed a joint income tax return with the collector of internal revenue for the 18th district of Ohio. In 1928 petitioners began operating a gasoline station at the corner of Cedar and Taylor Streets in University Heights, Ohio. A restaurant was added to the station in 1930 and a bar in 1933. In 1946 petitioners sold the gasoline station but continued to remain on the premises to operate the tavern and restaurant. However, in February of 1949 petitioners were evicted, and in November of that year they opened the Lamontia Tavern Lounge Bar at 13897 Cedar Road, South Euclid, Ohio. While operating the gasoline station, Anthony Lamontia worked from 7:00 a.m. to 12:00 p.m. on some days and for four hours a day on others. Angeline worked 10 hours a day, seven days a week. On July 1, 1944, petitioners purchased Sublot 26, located at Chardon and Richmond Roads in Cuyahoga County, Ohio, at an auction sale. At the time of the purchase petitioners' lease on the gasoline station property was due to expire in one year and *146 Sublot 26 was ideally located on a corner between two intersecting county roads. In 1946 petitioners negotiated with several oil companies for an arrangement whereby a gasoline station would be built on Sublot 26 to furnish them with some income from the property. Those negotiations were unsuccessful. However, in 1949 petitioners were sought out by a Mrs. Hubicheck, whose husband wished to re-enter the gasoline station business, and were induced to sell the property. The six other lots sold by petitioners in 1949 were purchased from the County Auditor at a public sale of lands declared forfeited by the State of Ohio for nonpayment of taxes. One of these lots was purchased as a home site; the others were bought as an investment. One of the six lots had been held for more than five years; two for more than two years; and the other three for more than six months. The seven parcels of land were purchased at a total cost of $2,644.45 and sold for a total of $12,240. When the lots were sold in 1949 they were in the same condition as they were when purchased. None of the lots were advertised for sale either in the newspapers or by "for sale" signs. Petitioners did not solicit offers for *147 any of the lots. Petitioners are not licensed to buy or sell real estate, and neither has ever worked as a real estate broker or salesman. During the period 1944-1949, inclusive, petitioners bought a total of sixty parcels of land, including the seven involved herein. All but one, on which there was a house, were vacant lots. Fifty-five of the sixty were bought at County Auditor's Public Land Sales customarily held once a year. Some of the others were purchased at Sheriff's Tax Foreclosure Sales. During this period petitioners sold twenty-six parcels, nine of them in 1949. On two of the nine sold in 1949, a short-term capital gain was realized and is not in dispute. In addition to the above, petitioners sold a brick building in 1949, on which a long-term capital gain in the amount of $19,318.22 was realized and is not in dispute herein. Anthony learned of the public sales from reading newspapers and from a weekly edition of a legal publication containing notices of Sheriff's Tax Foreclosure sales, for which he subscribed. All of these purchases were made by petitioners for investment purposes except the one on which they had intended to erect a filling station and the one on which *148 they had intended to build a new home for themselves. On one occasion Anthony put a "for sale" sign on one lot. He also advertised for tenants to occupy one piece of property on one occasion, and he solicited an offer from an adjoining homeowner to purchase one lot which was considered too small to be of use by anyone else. None of these activities related to any of the lots involved herein and it is not clear whether they took place before or after 1949. Petitioners were not, during the period involved, engaged in the real estate business. Furniture and fixtures purchased for $3,000 by petitioners in February of 1937 for use in a restaurant business were sold for $700 in 1949. Prior to 1949 petitioners had never taken any depreciation on their tax returns for these fixtures. When petitioners opened their new business in 1949, they purchased new fixtures for the Lamontia Lounge Bar. Petitioners sought the assistance of the Internal Revenue Service in making out their tax return for 1949. They were informed that fixtures of this type must be depreciated over a period of 15 years. On their 1949 return, the new fixtures were depreciated on the basis of an estimated 15-year life *149 and depreciation in the amount of $2,400 was taken on the old fixtures, such amount being the equivalent of one-fifteenth of the purchase price per year for the 12 years petitioners had owned the fixtures. In their income tax return for 1949, petitioners reported the profit from the sale of the seven lots involved, and $100 of the amount received for the old fixtures, as long-term capital gain taxable at 50 per cent. Respondent determined that the gain of $9,595.55 from the sale of the seven parcels of property was taxable as income at 100 per cent. Respondent also determined that petitioners realized a long-term capital gain of $700 from the sale of the old fixtures. Opinion The first issue is whether the profit realized by petitioners from the sale of seven lots in 1949 is taxable as long-term capital gain or as ordinary income. Respondent contends that the lots were "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," [1] and that the amount of gain from their sale is taxable as ordinary income. Petitioners, on the other hand, maintain that the parcels of property were capital assets held as investments for more than six months *150 and that the amount realized from their sale is entitled to long-term capital gain treatment. Both parties agree that whether the property was held primarily for sale to customers in the course of business is a question of fact. King v. Commissioner, 189 Fed. (2d) 122, affirming a Memorandum Opinion of this Court [9 TCM 136]. certiorari denied 342 U.S. 829; Guthrie v. Jones, 72 Fed. Supp. 784. Petitioners have carried their burden of proving that the lots in question were held primarily for investment and not for sale to customers in the ordinary course of business. In 1944 petitioners *151 purchased Sublot 26 at a time when they were operating a gasoline station, tavern and restaurant under a lease due to expire in one year because that parcel of property was ideally located for such a business. The remaining six lots were purchased at public land sales held by the County Auditor. One of these lots was held for more than five years, two for more than two years and the others for periods greater than six months. One of the lots was purchased as a possible home site, but petitioners decided not to build on it. None of the seven lots were subdivided by petitioners or otherwise improved for the purposes of resale. Petitioners did not put "for sale" signs on any of them and they did not list any of the parcels of property with real estate brokers or advertise them for sale in newspapers. None of the buyers were solicited by petitioners. In every instance the purchaser or his agent sought out petitioners with an offer for the property. Petitioners were not licensed real estate brokers or salesmen and had never been employed in either capacity. Until 1949, when they were evicted from their location at Cedar and Taylor Streets in University Heights, Ohio, and forced to seek *152 another business site, petitioners worked long hours at their tavern and restaurant. They employed no-one to assist them, and devoted all of their time to the restaurant business. Clearly, petitioners held the real estate as an investment. Respondent argues that the frequency and continuity of sales of realty coupled with petitioners' sales activity compels the conclusion that petitioners are in the business of selling real estate, citing Snell v. Commissioner, 97 Fed. (2d) 891, affiiming a Memorandum Opinion of this Court; Florence H. Ehrman, 41 B.T.A. 652, affd. 120 Fed. (2d) 607, certiorari denied 314 U.S. 668; Oliver v. Commissioner, 138 Fed. (2d) 910, affirming a Memorandum Opinion of this Court [2 TCM 78]; Harris v. Commissioner, 143 Fed. (2d) 279, affirming 44 B.T.A. 999. In those cases, however, the taxpayers actively developed subdivisions, made improvements, solicited purchasers, and "in fact did everything one ordinarily does in carrying on such a business * * *." Home Company, Inc. v. Commissioner, 212 Fed. (2d) 637, affirming a Memorandum Opinion of *153 this Court [12 TCM 741] entered June 30, 1953. There is no such sales activity here. We recognize that substantial sales of undeveloped real estate may place a taxpayer in the business of holding land for sale to customers even though the sales are unsolicited and unadvertised. Curtis v. Commissioner, 23 T.C. 740, affd. on this point (C.A. 3, March 30, 1956), 232 Fed. (2d) 167; Arthur E. Wood, 25 T.C. 468 (December 14, 1955). In the Curtis case the taxpayer was a dealer in both rental and undeveloped land who sold unimproved properties for an aggregate price of $417,490 during the three taxable years. In the Wood case the taxpayer sold over 300 lots in the two taxable years and maintained an office staffed by a full-time assistant and a part-time receiptionist to handle his real estate transactions. Those cases are clearly distinguishable. Here, petitioners sold seven unimproved lots for a total price of $12,240, and in doing so they carried on no sales promotion activity. Under the circumstances present herein we hold that petitioners were not in the business of selling real estate and that respondent erred in his determination *154 that the seven lots sold in 1949 were not entitled to capital gains treatment. Frieda E. J. Farley, 7 T.C. 198; Thomas E. Wood, 16 T.C. 213; Guthrie v. Jones, supra. In 1949 petitioners sold for $700 certain business furniture and fixtures which they had purchased in 1937. Prior to 1949 petitioners had never taken depreciation for this property. The second question is whether respondent erred in determining that the $700 was taxable as long-term capital gain. It is petitioners' contention that the property involved had an ordinary useful life of 15 years and that, at the time of the sale in 1949, there was an unrecovered cost of $600. The Commissioner determined, however, that the ordinary useful life of the property had been completely exhausted in 1949 and, accordingly treated the entire $700 received therefor as long-term capital gain. Cf. Even Realty Co., 1 B.T.A. 355. The burden was upon the petitioners to establish that the Commissioner's determination was in error. This they have failed to do. As pointed out by respondent, petitioners failed to produce any evidence as to the condition of the property when acquired *155 by them in 1937, that is, whether new or used. Accordingly we cannot determine that the ordinary useful life of the property had not been exhausted in 1949, as found by the Commissioner, and his determination with respect to this issue is approved. Cf. Hailey-Ola Coal Co., 24 B.T.A. 895. Decision will be entered under Rule 50. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or bnsiness), but does not include - (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *↩